UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JAMELLE L. RUSSELL,<br><br>　　　　　　　　　　Plaintiff,<br>　v.<br>NORWEIQA, *et al.*,<br><br>　　　　　　　　　　Defendants. | Case No. 3:20-cv-00350-MMD-CLB<br><br>ORDER |

## I.　SUMMARY

*Pro se* Plaintiff Jamelle L. Russell, who is an inmate in the custody of the Nevada Department of Corrections ("NDOC"), brings this action under 42 U.S.C. § 1983 against Defendants Michael Stolk[1] and Taylor DeShane.[2] (ECF No. 7 (First Amended Complaint ("FAC")).) Before the Court is a Report and Recommendation ("R&R") of United States Magistrate Judge Carla L. Baldwin (ECF No. 60), recommending the Court deny Plaintiff's motion for summary judgment (ECF No. 45)[3] and grant Defendants' motion for summary judgment (ECF No. 48).[4] Plaintiff filed an objection to the R&R. (ECF No. 65 ("Objection").)[5] Before the Court is also Plaintiff's motion for appointment of counsel (ECF

---

[1]As Judge Baldwin noted in the R&R, Plaintiff erroneously identified Defendant Stolk as "Stark" in his complaint. (ECF No. 60 at 1 n.2.) Plaintiff has since referred to Stolk by his correct name, and the Court similarly does so throughout this order.

[2]The other Defendants have been dismissed.

[3]Defendants responded (ECF No. 57), and Plaintiff replied (ECF No. 59).

[4]Plaintiff responded (ECF No. 55), and Defendants did not reply.

[5]Because Plaintiff's originally-filed objection to the R&R (ECF No. 61) appeared to be missing pages, in accordance with the Court's February 3, 2023 order (ECF No. 64), Plaintiff filed an amended objection containing all pages of the original document (ECF No. 65), which the Court now treats as the operative objection. Defendants filed a response to the amended objection. (ECF No. 66.)

No. 62). As further explained below, because genuine disputes of material fact exist as to both of Plaintiff's conditions of confinement claims, the Court will reject the R&R as to Defendant's motion for summary judgment and adopt the R&R as to Plaintiff's motion for summary judgment. Accordingly, the Court will deny both Plaintiff's and Defendants' motions for summary judgment. The Court will also deny Plaintiff's motion for appointment of counsel because he has not demonstrated exceptional circumstances.

## II. BACKGROUND

The Court incorporates by reference Judge Baldwin's description of the case's factual background and procedural history provided in the R&R, which the Court adopts to the extent they are consistent with the Court's findings below. (ECF No. 60 at 2-4.)

## III. DISCUSSION

The Court first addresses Plaintiff's Objection as to each of Plaintiff's Eighth Amendment conditions of confinement claims. The Court then addresses Defendants' administrative exhaustion and qualified immunity arguments.[6] The Court lastly addresses Plaintiff's motion for appointment of counsel.

### A. Eighth Amendment Conditions of Confinement Claims

In the R&R, Judge Baldwin recommends denying Plaintiff's motion for summary judgment and granting Defendants' motion for summary judgment as to both of Plaintiff's conditions of confinement claims—the first based on allegations that he was forced to lay in someone else's blood and remain in bloody clothes, and the second based on allegations that he was denied shower shoes and forced to shower barefoot. (ECF No. 60 at 8-12.) Plaintiff objects to Judge Baldwin's recommendations (ECF No. 65), and the

---

[6]In the R&R, Judge Baldwin declined to address Defendants' administrative exhaustion and qualified immunity arguments because she found that Plaintiff's claims failed on the merits. (ECF No. 60 at 11 n.7.) Plaintiff cursorily addresses the administrative exhaustion and qualified immunity issues in his Objection. (ECF No. 65 at 5.) Because the Court ultimately finds genuine issues of material fact preclude summary judgment on Plaintiff's claims, it addresses these affirmative defenses.

Court addresses each of Plaintiff's claims in turn under de novo review.[7] *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1116 (9th Cir. 2003) ("[D]e novo review of the magistrate judges' findings and recommendations is required if, but *only* if, one or both parties file objections to the findings and recommendations.") (emphasis in original).

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). To challenge the conditions of confinement under the Eighth Amendment, a plaintiff must meet both an objective and subjective test. *See id.*

The objective prong requires a showing that the deprivation was "sufficiently serious" to form the basis for an Eighth Amendment violation. *See id.* "[S]ubjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." *Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995); *see also Johnson*, 217 F.3d at 731-32. When considering a conditions of confinement claim, a court should consider the amount of time to which the prisoner was subjected to the conditions. *See Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005).

As to the subjective prong of the analysis, prisoners must establish prison officials' "'deliberate indifference' to inmate health or safety" to establish an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To demonstrate that a prison

---

[7]Defendants erroneously reference the clear error standard of review throughout their analysis in response to Plaintiff's Objection, despite stating earlier in the response that "[w]here a party timely objects to a magistrate judge's report and recommendation, then the Court is required to 'make a de novo determination of those portions of the [report and recommendation] to which objection is made." (ECF No. 66 at 3-7.) Accordingly, the Court finds Defendant's response to Plaintiff's Objection largely unpersuasive.

The Court also notes that under Federal Rule of Civil Procedure 56(c)(3), it is permitted to consider all evidence in the record, not just those materials cited by the parties, and accordingly does so in its de novo review here. Fed. R. Civ. Proc. 56(c)(3).

official was deliberately indifferent to a serious threat to the inmate's safety, the plaintiff must show that the official knew of and disregarded an excessive risk to inmate health or safety. *Id*. at 837.

A defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). "A person deprives another 'of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains].'" *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (emphasis in original, citation omitted).

### 1. First Claim Based on Blood

Judge Baldwin recommends denying Plaintiff's motion and granting Defendants' motion because Defendants have met their burden by submitting evidence that Plaintiff was not forced to lay in someone else's blood or "covered in blood" as alleged, while Plaintiff has not come forward with evidence to contradict Defendant's evidence. (ECF No. 60 at 8-9.) Plaintiff's Objection essentially argues that he has provided evidence and that Defendants' evidence in fact raises genuine issues of material fact. (ECF No. 65 at 10-12.) The Court agrees with Plaintiff as explained below.

Defendants argue that Plaintiff cannot prove an issue of material fact that he was required to lay in blood and wear bloody clothes. (ECF No. 48 at 9.) Defendants submitted video and photographic evidence of the incident under seal (ECF Nos. 50-1, 50-2, 50-3) and argue that they show Plaintiff's shirt had only a small mark of unknown substance before *and* after he laid down in front of his cell. (ECF No. 48 at 9.) In his Objection, Plaintiff argues that Defendants' proffered video does not show the blood that was on Plaintiff's skin and dark blue sweatpants. (ECF No. 65 at 3, 10-11.) Defendants focus only on Plaintiff's shirt, pointing to a grievance (ECF No. 48-2 at 8) in which Plaintiff only refers to blood on his shirt. (ECF No. 48 at 9.) However, Plaintiff also refers in other instances to generally being left "in someone else's blood" (ECF No. 48-2 at 4, 12 (grievances)), "blood

4

covering [his] body" (ECF No. 45-2 at 1 (Plaintiff's declaration)), and "bloody clothes" in general which would include his pants (ECF No. 7 at 3, 5 (Plaintiff's FAC allegations sworn under penalty of perjury[8])); ECF No. 45-2 at 2 (Plaintiff's declaration)).

In reviewing the video and photos, the Court finds that, in the photo of Plaintiff's cell shortly after the incident (ECF No. 50-2), blood is clearly visible and slightly smeared on the ground in front of Plaintiff's cell where he had laid down according to the video (ECF No. 50-1). From the video alone, it is unclear whether there was blood on the ground near where Plaintiff laid. (*Id.*) The unidentified mark on Plaintiff's shirt noted by Defendants is slightly visible before Plaintiff lies down in the video and then clearly visible once Plaintiff gets up (*id.*); that mark is also clearly visible in the photo of Plaintiff in a hallway after the incident (ECF No. 50-3). From the video and photo of Plaintiff after the incident, blood does not appear to be visible on Plaintiff's white shirt, but it is unclear whether blood is on Plaintiff's skin or pants because they are relatively dark in color. (ECF Nos. 50-1, 50-3.) The Court therefore finds that, taking these pieces of evidence together and viewing them in the light most favorable to Plaintiff, a reasonable jury could find that there was blood on Plaintiff's skin and dark blue sweatpants. Accordingly, genuine issues of material fact exist as to whether Plaintiff was ordered to lay in someone else's blood and had that blood on him as a result.

Next, Defendants argue and provide evidence that Plaintiff had access to a shower following the incident based on an affidavit from Associate Warden Drummond (ECF No. 48-1 at 3), stating that inmates in the infirmary are provided clean clothes and shower items upon request. (ECF No. 48 at 10.) Defendants also note that Plaintiff in a grievance (ECF No. 48-2 at 5) admitted to showering in the infirmary on August 2, 2019—the day of the incident. (ECF No. 48 at 10.) The Court finds that, while Plaintiff admits to being "forced

---

[8]When a *pro se* litigant opposes summary judgment, their contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge; (2) they set forth facts that would be admissible into evidence; and (3) the litigant attested under penalty of perjury that they were true and correct. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (citations omitted).

to shower barefoot," it is unclear whether he showered specifically on the day of the incident. (ECF No. 48-2 at 5.) However, even assuming Plaintiff showered shortly after the incident, Plaintiff validly argues in his reply and Objection that because he was refused a change of clothes, he still had to remain in bloody clothes and exposed to a "biohazard," which defeated the purpose of the shower. (ECF No. 59 at 4; ECF No. 65 at 11.) There is evidence that Plaintiff asked Stolk in the infirmary for a change of clothes or his "property because [he was] covered in blood," but he was denied. (ECF No. 7 at 4-5 (sworn FAC allegations); ECF No. 48-2 at 4-5, 12 (grievances)). There is also evidence that Plaintiff then filed an emergency grievance on August 4, 2019—two days after the incident—complaining of his bloody, "unsanitary" clothes and lack of his "property," which was received and signed by DeShane. (ECF No. 54 at 4-5.)

If Plaintiff had to remain in bloody clothes even after showering, then his exposure to someone else's blood allegedly did not end until he actually obtained clean clothes. Plaintiff was in the infirmary from August 2, 2019 to August 5, 2019 (ECF No. 48-1 at 3) but contends that for another ten days after he left the infirmary, he was without his property and had to continue to wear bloody clothes (ECF No. 7 at 5). Defendants on the other hand assert that Plaintiff received his property on August 8, 2019, which is corroborated by an inmate inventory transfer form (ECF No. 48-6 at 6). (ECF No. 48 at 10.) However, Plaintiff claims that when he finally got his property back, most of it was missing, so he filed a kite about it. (ECF No. 48-2 at 4.) This is supported by Plaintiff's kite dated August 12, 2019 (ECF No. 55 at 10) and a note attached to his inmate inventory transfer form that appears to be written by a "C/O T. Bradshaw" indicating that, when he delivered Plaintiff's property to him, there were "no blankets, sheets, pants[,] shirts, even though the Inventory has them listed." (ECF No. 48-6 at 4.)

Accordingly, the Court finds that genuine issues of material fact exist as to whether and how long Plaintiff had to remain in bloody clothes (including after showering). *See Anderson*, 45 F.3d at 1314 ("[S]ubjection of a prisoner to lack of sanitation that is severe

or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment.").

As to personal participation,[9] Defendants only argue that DeShane lacks personal participation, contending that DeShane cannot be held liable because he only responded to a grievance and that alleged grievance was "never produced" and "does not appear in [Plaintiff]'s grievance history." (ECF No. 48 at 5.) Plaintiff alleges that DeShane read and signed the emergency grievance he filed on August 4, 2019. (ECF No. 7 at 4, 5.) While it is true that this emergency grievance does not appear in the grievance history that Defendants submitted (ECF No. 48-4), it does exist, as Plaintiff himself later filed this emergency grievance as a supplemental exhibit (ECF No. 54) in support of his own motion.[10]

A defendant may "personally participate" in a violation if they personally reviewed and responded to the plaintiff's grievance about the alleged constitutional deprivation, were aware of the plaintiff's condition and alternative recommendations, but still failed to prevent further harm. *See Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014); *Snow v. McDaniel*, 681 D.3d 978, 989 (9th Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014). However, "merely denying a grievance without some decision-making authority or ability to resolve the underlying issue grieved is not enough to establish personal participation." *Mack v. Aranas*, Case No. 2:17-cv-02239-APG-EJY, 2021 WL 1535331, at *3 (D. Nev. Apr. 16, 2021) (citations omitted).

---

[9]In the R&R, Judge Baldwin declined to address Defendants' personal participation arguments because she found that Plaintiff's claims failed on the merits on other grounds. (ECF No. 60 at 11 n.7.) Plaintiff cursorily addresses the personal participation issue in his Objection (ECF No. 65 at 5). The Court independently addresses the personal participation issue here.

[10]In his Objection, Plaintiff argues that by not including his emergency grievance in their grievance history exhibit, Defendants "falsified documents." (ECF No. 65 at 1.) While Defendants were indeed mistaken in asserting that there is no record of the emergency grievance (ECF No. 48 at 3, 5), that ultimately does not matter because Plaintiff himself later filed this emergency grievance, and Judge Baldwin reviewed and considered it in reaching her findings and recommendations (ECF No. 60 at 11). The Court also considers Plaintiff's emergency grievance in its review here.

Here, Defendants appear to concede that DeShane responded to the grievance (ECF No. 48 at 5) and indeed DeShane's signature is on the emergency grievance as the receiving staff member, dated August 4, 2019 (ECF No. 54 at 4). Plaintiff indicated in the emergency grievance that he was forced to lay in blood, forced to wear a shirt with someone else's blood on it, and left without his property. (*Id.* at 4-5.) A reasonable jury could find that DeShane not only responded to the grievance but had some decision-making authority or ability to resolve Plaintiff's grievance by ensuring he obtained a change of clothes, particularly given Defendants' contention that "infirmary inmates are given clothing . . . upon request." (ECF No. 48-1 at 3.) Accordingly, DeShane is not entitled to summary judgment based on lack of personal participation.

For the reasons discussed above, the Court rejects the R&R as to Plaintiff's first conditions of confinement claim based on the allegations that Plaintiff was forced to lay in someone else's blood and remain in bloody clothes for a prolonged period of time.

### 2. Second Claim Based on Shower Shoes

Judge Baldwin recommends denying Plaintiff's motion and granting Defendants' motion because even though Defendants did not meet their burden, there is still no objective violation of Plaintiff's Eighth Amendment rights and Plaintiff also cannot show causation as to the subjective prong. (ECF No. 60 at 9-11.) Plaintiff's Objection argues that he has provided evidence that Defendants denied Plaintiff shower shoes for a prolonged period of time, raising genuine issues of material fact as to the objective and subjective prongs. (ECF No. 65 at 11-13.) The Court agrees with Plaintiff as explained below.

Defendants do not appear to dispute that Plaintiff's grievance states that Plaintiff showered "barefoot" and thus he lacked shower shoes while in the infirmary. (ECF No. 48 at 10.) Defendants argue that Plaintiff "cannot prove that [Defendants] knew of and disregarded an excessive risk to [Plaintiff]'s safety because [he] was not covered in blood; [he] admits to showering on August 2, 2019; and Plaintiff had continuous access to a shower. (ECF No. 48 at 11.) But these arguments go toward Plaintiff's first claim as

discussed above and do not address Plaintiff's alleged harm of prolonged exposure to serious bacteria due to being denied shower shoes. The Court therefore finds them unpersuasive.

The Ninth Circuit has held that an Eighth Amendment claim based on allegations that an incarcerated person's "inability to obtain shower shoes put him at risk of exposure to serious bacteria"—Plaintiff's second claim here—is a cognizable claim. *See Gonzalez v. Mullen*, 446 F. App'x 17 (9th Cir. 2011); *see also Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir.1996) (indigent inmates have the right to personal hygiene supplies). There is evidence that Plaintiff was without shower shoes while he was housed in the infirmary (ECF No. 54 at 4 (emergency grievance); ECF No. 48-2 at 5, 8, 12 (informal grievances)); evidence that Plaintiff asked Stolk in the infirmary for shower items, including shower shoes, but was denied (ECF No. 7 at 4-5 (sworn FAC allegations); ECF No. 48-2 at 5, 12 (grievances)); and evidence that Plaintiff then filed an emergency grievance complaining of the lack of shower shoes and risk of "skin disease," which was received and signed by DeShane (ECF No. 54 at 4).

Plaintiff objects to Judge Baldwin's finding that he was only denied shower shoes "for a brief period, where [he] showered only once," which she found was insufficient to show an objective violation of his Eighth Amendment rights. (ECF No. 65 at 12-13; ECF No. 60 at 10.) Plaintiff appears to contend that he was actually without shower shoes for at least a week and showered several times over that period, which he asserts "isn't brief [at] all." (ECF No. 65 at 12-13.) First, the Court finds that it is unclear from the record that Plaintiff only showered once while in the infirmary. Plaintiff was in the infirmary cell from August 2, 2019 to August 5, 2019 (ECF No. 48-1 at 3) and stated in a grievance that he was "forced to shower barefoot, chancing an infection from a dirty floor for three days" (ECF No. 48-2 at 5). In another grievance, he states he "was forced to take a shower [with] no shower shoes [and] risk getting mercer [sic] from a dirty shower floor for two days." (ECF No. 48-2 at 8.)

Second, in addition to the evidence that Plaintiff lacked shower shoes while in the infirmary, there is also evidence to show that Plaintiff continued to lack shower shoes after he left the infirmary on August 5, 2019. As discussed under the first claim, Defendants proffered evidence that Plaintiff received his property, which included shower shoes, on August 8, 2019. (ECF No. 48-6 at 6 (inmate inventory transfer form).) However, Plaintiff submitted evidence of a kite dated August 12, 2019 wherein he stated that he was "missing a lot of [his] property from [his] trip to the infirmary" and named his shower shoes as one of the missing items. (ECF No. 55 at 10.) And Defendants' evidence indicates that a "C/O T. Bradshaw" noted there were missing items when he returned Plaintiff's property to him. (ECF No. 48-6 at 4.)

Accordingly, the Court finds that genuine issues of material fact exist as to how long Plaintiff lacked shower shoes, whether Plaintiff's deprivation of shower shoes was therefore "sufficiently serious" under the objective prong, and whether Defendants knew of and disregarded a serious threat to Plaintiff's health or safety under the subjective prong. *See Johnson*, 217 F.3d at 731; *Anderson*, 45 F.3d at 1314 ("[S]ubjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment."); *Farmer*, 511 U.S. at 837.

Judge Baldwin also found that even if Plaintiff could raise an issue of fact as to the objective prong, his claim still fails as to causation under the subjective prong. (ECF No. 60 at 10-11.) Judge Baldwin specifically found that Plaintiff cannot show that Defendants were the actual and proximate cause of his injuries because they were not the only people who could provide Plaintiff shower shoes. (*Id.*) However, the Court finds that Defendants need not have been the only people who could remedy Plaintiff's situation to show causation. Assuming Defendants knew of and disregarded Plaintiff's lack of shower shoes over a prolonged period of time, a reasonable jury could find that Defendants' deliberate indifference caused Plaintiff's prolonged exposure to serious bacteria. *See Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062 (9th Cir. 2013) ("As a practical matter, plaintiffs who have already demonstrated a triable issue of fact as to whether prison

officials exposed them to a substantial risk of harm, and who actually suffered precisely the type of harm that was foreseen, will also typically be able to demonstrate a triable issue of fact as to causation."). The Court therefore finds that genuine issues of material fact exist as to causation under the subjective prong.

As to Defendants' arguments that DeShane lacked personal participation, the Court's reasoning above as to the first claim similarly applies to this second claim. Again, Defendants appear to concede that DeShane responded to Plaintiff's emergency grievance (ECF No. 48 at 5) and indeed DeShane's signature is on the grievance as the receiving staff member (ECF No. 54 at 4). Plaintiff indicated in his emergency grievance that he was taken to an infirmary cell with "no shower shoes" and therefore risked "get[ting] a skin disease." (*Id.* at 4-5.) Given Defendants' assertion that "infirmary inmates are given . . . sanitation items, including but not limited to soap, upon request" (ECF No. 48-1 at 3), a reasonable jury could find that DeShane not only responded to the grievance but also had some decision-making authority or ability to resolve Plaintiff's grievance by ensuring he obtained shower shoes. Accordingly, DeShane is not entitled to summary judgment based on lack of personal participation as to Plaintiff's second claim. For the reasons discussed above, the Court therefore rejects the R&R as to Plaintiff's second conditions of confinement claim based on the allegations that Plaintiff was denied shower shoes and forced to shower barefoot.

In sum, because genuine issues of material fact exist as to both of Plaintiff's claims, the Court rejects the R&R to the extent it recommends granting Defendants' motion for summary judgment and adopts the R&R to the extent it recommends denying Plaintiff's motion for summary judgment. Accordingly, the Court sustains Plaintiff's Objection as to Defendants' motion and overrules the Objection as to Plaintiff's motion.[11]

---

[11]In his Objection, Plaintiff additionally argues that he was pressured by Defendants' counsel, Laura Ginn, and Judge Baldwin to consent to Judge Baldwin's jurisdiction and that Ms. Ginn had repeatedly sent him the Magistrate Judge Jurisdiction consent form (ECF No. 65 at 9.) Defendants respond that Plaintiff had consented to magistrate judge jurisdiction and that Ms. Ginn was ordered to provide the consent form

B. **Administrative Exhaustion**

Because the Court rejects the R&R as to granting Defendants' motion on the merits, the Court will independently address Defendants' arguments that Plaintiff failed to exhaust his claims (ECF No. 48 at 6-7). The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Failure to exhaust under the PLRA is 'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (*quoting Jones v. Bock*, 549 U.S. 199, 204, 216 (2007)).

According to Defendants, Plaintiff filed two informal grievances relating to the conduct complained of in his two claims. (ECF No. 48 at 6.) Defendants' proffered evidence of these two grievances (ECF Nos. 48-2, 48-3, 48-4) shows the following. Plaintiff's first informal grievance—Grievance 2006-30-87768—was "rejected" on September 9, 2019 because "no factual harm/loss [was] noted and/or no remedy [was] requested." (ECF No. 48-2 at 6-9.) Plaintiff filed his second informal grievance—Grievance 2006-30-89982—complaining of the same conduct and including a requested remedy. (*Id.* at 10-13; ECF No. 48-3 at 2-5.) The second grievance was "not accepted" for stating the same information as the first grievance. (*Id.*) Plaintiff then appears to have re-filed his first grievance complaining of the same conduct and requesting the same remedy, which was "not accepted" on October 14, 2019 for failure to sign and date the grievance form. (ECF No. 48-2 at 2-5.)

The Court first finds that Plaintiff made good faith efforts to exhaust his

---

to Plaintiff. (ECF No. 66 at 7.) The Court finds that Plaintiff did not consent to Judge Baldwin's jurisdiction, as he never signed the consent form, but it is true that Judge Baldwin asked Ms. Ginn to provide the consent form to Plaintiff because the parties indicated in their case management reports that they are "amenable to consenting" to her jurisdiction. (ECF No. 29 at 2.) The Court therefore finds that Defendants' counsel and Judge Baldwin did not improperly pressure Plaintiff to consent to magistrate judge jurisdiction as he claims.

1    administrative remedies. Plaintiff initially filed an emergency grievance shortly after the
2    incident, which was denied as "not an emergency." (ECF No. 54 at 4-5.) Administrative
3    Regulation ("AR") 740 states that "[i]n the event the inmate requests further review of a
4    claim not deemed an emergency, the inmate may file a grievance appeal commencing at
5    the Informal Level." (ECF No. 48-5 at 10.) Plaintiff thereafter filed his first informal
6    grievance, which explained over three pages the factual harm and loss he suffered. (ECF
7    No. 48-2 at 7-9.) He requested that "someone make [his harm and loss] right," but that
8    response was deemed an inadequate requested remedy and "rejected." (*Id.* at 6, 9.) The
9    instructions on the improper grievance memo indicate that inmates may correct the noted
10   deficiencies and re-submit a "rejected" grievance. (*Id.* at 6.). After his first grievance was
11   "rejected," Plaintiff attempted to comply with those instructions by reasonably submitting
12   a new grievance curing the noted deficiencies, but that grievance was "not accepted." (*Id.*
13   at 10-13.) Neither AR 740 (ECF No. 48-5) nor these instructions specify what resubmitting
14   a grievance exactly entails (ECF No. 48-2 at 6), and the Court finds Plaintiff substantially
15   and reasonably complied with the instructions he was given.

16         Defendants argue that Plaintiff ultimately abandoned his first grievance because he
17   did not sign it after re-filing it and NDOC's regulation states "an inmate's election not to
18   sign and date any grievance form at any level shall constitute abandonment of the claim."
19   (ECF No. 48-5 at 6.) While this may be technically true, the Court finds that Plaintiff, after
20   already making several good-faith reasonable efforts, was effectively stuck in a Catch-22
21   situation at that point. The improper grievance memo appears to make a distinction
22   between grievances that are "not accepted" and those that are "rejected." (ECF No. 48-2
23   at 2.) As already noted, the instructions on the memo for grievances that are "rejected"
24   indicate that an inmate may "re-submit" that grievance. (*Id.*) But the instructions for
25   grievances that are "not accepted" do not contain such instructions, thereby implying that
26   they may not be resubmitted, and instead state "not accepted" grievances "may NOT
27   proceed to the next level." (*Id.*)

28         Plaintiff's first grievance after re-filing was "not accepted," which a reasonable

1 reading of the instructions would indicate that Plaintiff was not permitted to resubmit the same grievance. (ECF No. 48-2 at 2; ECF No. 48-5 at 5.) If Plaintiff were to attempt to file a new grievance with the same content, as he had previously done with his second grievance, it would similarly be "not accepted" for containing the same claims. Plaintiff was thus left with two grievances that were "not accepted," which he could not appeal per NDOC's regulations (ECF No. 48-5 at 5) and which he ostensibly could not resubmit according to the implied instructions in the improper grievance memo (ECF No. 48-2 at 2, 10). AR 740 mentions no distinction between "not accepted" and "rejected" grievances that would clarify this confusion. (ECF No. 48-5.) Viewing the facts in the light most favorable to Plaintiff as the non-moving party, Plaintiff was therefore left with no other options to pursue his grievance administratively.

An inmate "must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 136 S.Ct. 1850, 1858 (2016). The Supreme Court has recognized three instances where an administrative remedy is unavailable. First, the remedy is unavailable when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1853. Second, when the procedure is "so opaque that it becomes, practically speaking, incapable of use," where "no ordinary prisoner can navigate it." *Id.* at 1853-54. Finally, "when prison administrators thwart inmates from taking advantage of [the process] through machination, misrepresentation, or intimidation." *Id.* at 1854. The Court finds that Plaintiff's situation described above fits the second exception articulated in *Ross*. Because Defendants have not shown that Plaintiff failed to exhaust available remedies, they are not entitled to summary judgment on this issue.

### C. Qualified Immunity

"In determining whether a state official is entitled to qualified immunity in the context of summary judgment, [courts] consider (1) whether the evidence viewed in the light most favorable to the plaintiff is sufficient to show a violation of a constitutional right and (2) whether that right was 'clearly established at the time of the violation.'" *Sandoval*

*v. Cnty. of San Diego*, 985 F.3d 657, 671 (9th Cir. 2021) (citing *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 599 (9th Cir. 2019)). Denying judgment as a matter of law is particularly appropriate where factual disputes remain that bear on an ultimate finding of qualified immunity. *See, e.g.*, *Torres v. City of Los Angeles*, 548 F.3d 1197, 1210-11 (9th Cir. 2008) (noting that where "facts material to the qualified immunity determination are in dispute," summary judgment is inappropriate). However, the Court may exercise "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Court will exercise its discretion and first address whether Defendants' conduct violated a constitutional right. *See id*. For the same reasons discussed above, viewing the facts in the light most favorable to Plaintiff, there are still genuine disputes of material fact as to whether Defendants violated Plaintiff's Eighth Amendment rights. Accordingly, the Court finds that Defendants are not entitled to qualified immunity at this stage.[12] *See, e.g.*, *Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1160 (9th Cir. 2014) ("If 'genuine issue[s] of material fact exist[ ] that prevent [ ] a determination of qualified immunity at summary judgment, the case must proceed to trial.'") (citation omitted).

### D.  Motion for Appointment of Counsel

Lastly, the Court addresses Plaintiff's motion for appointment of counsel (ECF No. 62). Plaintiff argues "that the issues in this case are complex, that [he] is unable to adequately present the claims without the assistance of counsel, and that [he] is unable to retain private counsel to represent him." (*Id*. at 2.)

"There is no constitutional right to appointed counsel in a § 1983 action." *Rand v.*

---

[12]Because the Court finds that genuine disputes of material fact exist as to whether Defendants violated a constitutional right, the Court need not—and does not—address Defendants' arguments that the constitutional rights at issue here were not clearly established at the time of the alleged violation because Defendants "complied with all appropriate ARs and policies and procedures of the NDOC," none of which "have been found to be unconstitutional," and therefore Defendants were "never on notice that they were violating any constitutional rights." (ECF No. 48 at 12-13.)

*Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), *opinion reinstated in pertinent part*, 154 F.3d 952, 954 n.1 (9th Cir. 1998) (en banc). A district court may request that an attorney represent an indigent civil litigant, *see* 28 U.S.C. § 1915(e)(1), but only when the case presents "exceptional circumstances," *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). "A finding of exceptional circumstances requires an evaluation of both the likelihood of success on the merits and [the plaintiff's ability to] articulate his claims *pro se* in light of the complexity of the legal issues involved." *Id*. (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)) (internal quotation marks omitted).

Exceptional circumstances do not exist here. The Court finds that Plaintiff is capable of articulating his claims in light of the legal complexities of the case. *See Terrell*, 935 F.2d at 1017. Plaintiff only makes conclusory assertions that this case is complex (ECF No. 62 at 2), but this case is limited to two Eighth Amendment conditions of confinement claims against two Defendants and is not particularly complex. Plaintiff also only conclusorily asserts that he is unable to adequately present his claims without the assistance of counsel. (*Id.*) However, the Court finds that Plaintiff is able to adequately present his claims *pro se*, as demonstrated by Plaintiff's articulation of his claims and arguments in motions, responses, replies, and objections, some of which the Court has agreed with. Plaintiff's circumstances are ultimately unexceptional compared to most prisoner civil rights cases. *See Wood v. Housewright*, 900 F.2d 1332, 1335-36 (9th Cir. 1990) (finding that the "difficulties which any litigant would have in proceeding pro se . . . do not indicate exceptional factors"). Accordingly, the Court denies Plaintiff's motion for appointment of counsel.

**IV.     CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Plaintiff's objection (ECF No. 65) to the Report and

Recommendation of U.S. Magistrate Judge Carla L. Baldwin is sustained in part and overruled in part, as specified herein.

It is further ordered that Judge Baldwin's Report and Recommendation (ECF No. 60) is rejected in part and adopted in part, as specified herein.

It is further ordered that Plaintiff's motion for summary judgment (ECF No. 45) is denied.

It is further ordered that Defendants' motion for summary judgment (ECF No. 48) is denied.

It is further ordered that Plaintiff's motion for appointment of counsel (ECF No. 62) is denied.

It is further ordered that under LR 16-5, the Court finds that it is appropriate to refer this case to Judge Baldwin to conduct a settlement conference. If the parties do not settle, the Joint Pretrial Order is due within 30 days of the date the settlement conference is held.

DATED THIS 6th Day of March 2023.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE